```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

JAY BRADSHAW,

          Plaintiff,

  -against-

DONALD VENETTOZZI; MICHAEL HILL;
S. WHITE; PAUL PICCOLO; STEVE POST; SCHMIDT
CHARLSE REINHART; E. SPECK; LADOUE;
PAUCELIUS; TERRIBILINI; TESHANI; FURNEY;
MARSHALL; R. COLLINS; B. COON; CLARK; and
B. Oakes,

          Defendants

**AMENDED COMPLAINT**

Jury Trial Demanded

21-CV-06604 (EAW)

*[FILED FEB 16 2022, MARY C. LOEWENGUTH, CLERK, WESTERN DISTRICT OF NY]*

## JURISDICTION

1. This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), and 2201.

## PARTIES

2. Defendant DONALD VENETTOZZI was the Director of Special Housing Unit (SHU) within the Department of Correction and Community Supervision ("DOCCS"). He is sued in his individual capacity.

3. Defendant MICHAEL HILL is a deputy at Attica Correctional Facility ("Attica"). He is sued in his individual capacity.

4. Defendant S. WHITE is a captain at Attica. He is sued in his individual capacity.

5. Defendant PAUL PICCOLO is the Superintendent at Southport Correctional Facility. He is sued in his individual capacity.

6. Defendant CHARLES REINHART is a Deputy at Southport. He is sued in his individual capacity.

7. Defendant STEVE POST is a captain at Southport. He is sued in his individual capacity.

8. Defendant SCHMIDT, and PAUCELIUS are correctional sergeants at Southport. They is sued in their individual capacity.

9. Defendant E. SPECK and LODOUE are employed at Southport. They are sued in their individual capacity.

10. Defendant TERBIBILINI, TESHANI, FURNEY, MARSHALL, R. COLLINS, B. COON, and CLARK are correctional officers employed at Southport. They are sued in their individual capacity.

## FACTS

**FIRST MISBEHAVIOR REPORT:** Period of Confinement January 10, 2018 - September 6, 2018

11. On January 12, 2018, at Attical Correctional Facility, plaintiff was served misbehavior report charging violation of Inmate Rule 104.13 (Disturbance), 106.10 (Direct Order), 107.10 (Interference), 107.11 (Harassment), 109.12 (Movement Violation) and 115.10 (Frisk Procedures).

12. At the Disciplinary hearing, plaintiff request two video surveillance footage. The video depicting plaintiff returning from the Hospital call-out and officer shouting from behind him "You on the wall" and a second time as he pointed to indicate for plaintiff to get on the wall behind a large locker that obstruct the view of the camera. And when plaintiff reasonable requested an Sergeants presence to go on the wall in view of the camera — due to concerns for his safety —, he was instantly grabbed by the shirt and had a mace can pointed at his face by an officer while a second officer pushed in shoved plaintiff behind the larger locker. This evidence would have establish that the misbehavior report was false.

13. Had plaintiff's due process right to present this video evidence been honored, plaintiff would have been able to prove the misbehavior report false and would not have been found guilty.

14. Defendant Hill denied plaintiff request for the video evidence and found plaintiff guilty of all charges in the misbehavior report. Hill imposed a penalty of 180 days SHU along with 180 days loss of recreation, packages, phones and commissary.

15. On March 14, 2019, defendant Venettozzi reviewed the hearing record and affirmed the determination, except dismiss the charge of 107.10 (Interference), but, failed to correct the due process violation.

16. During this period of confinement, plaintiff was denied about seven (7) showers from April

2

9, 2018 to May 11, 2018 which resulted in plaintiff developing a skin fungus about his neck, shoulder, upper torso and arms. On May 15, 2018 plaintiff was attacked by another prisoner whom he was shackled to during transportation to another facility. Plaintiff sustained a 6 inch scar on his left chin. And, plaintiff began to develop stomach symptoms that were unusual and aggravating pains and bowel troubles.

SECOND MISBEHAVIOR REPORT: Period of Confinement September 6, 2018 - November 5, 2018

17. On January 22, 2018, at Attica, while returning from the shower and being escorted by two officers, plaintiff looked into 8 cell at the individual who called his name; but, was slammed into the bars of 10 cell and then inside.

18. Plaintiff reported the incident to the area supervisor who photographed plaintiff injuries prior to him being examined by medical staff, who noted an abrasion on plaintiff's right shoulder and prescribed pain medication.

19. Plaintiff was served a misbehavior report for violation of inmate Rule 104.11 (Violent Conduct), 107.10 (Interference), 106.10 (Direct Order) and 109.12 (Movement Violation).

20. After the Disciplinary hearing, defendant White found plaintiff guilty of all charges despite the video evidence depicting plaintiff being slammed and pushed inside the cell.

21. Had plaintiff's due process right to an impartial hearing officer and to be found guilty on some "reliable evidence" to support the determination of guilt, defendant Hill would not have imposed a penalty of 120 days SHU along with 120 days loss of recreation, commissary and phone.

22. On July 2, 2018, defendant Venettozzi modified the penalty to 60 days SHU along with 60 days loss of recreation, commissary and phone. This penalty was still excessive in light of the SHU sanction already imposed on plaintiff, the evidence presented at the hearing, and, thus, Venettozzi was deliberately indifferent to plaintiff's health and safety.

23. During this period of confinement, on September 28, 2018, plaintif was attacked in a double-bunk cell. On October 5, 2018, plaintiff was repeatedly attacked in a double-bunk cell for several hours and sustained, inter alia, a cut on his right eyebrow. Lastly, plaintiff's stomach condition continued to worsened.

CONTINUED CONFINEMENT IN SHU FROM November 5, 2018 - October 5, 2019

3

24. During this period of Confinement at Upstate Correctional Facility, plaintiff was deprived breakfast and lunch on November 26, December 2, 7-8, 13, 26 and 31, 2018, and January 1 and 4, 7-8, 2019. Plaintiff was provided a single meal every twenty-four (24) hours. In addition, plaintiff's stomach condition continued to worsen.

25. On January 10, 2019, at Upstate, plaintiff was physically and sexually assaulted in the cell by another prisoner. On March 5, 2019, plaintiff was assaulted by another prisoner in a double-bunk cell. On March 13b-14, 2019, plaintiff was sexually assaulted in a double-bunk cell.

26. From January 14, 2019 to February 25, 2019 and March 18, 2019 to March 22, 2019, at Upstate, plaintiff's sleep was constantly interrupted by constant banging by prisoner who banged on his desktop and door which even caused his bed to vibrate. Plaintiff did suffer sleep deprivation, headaches, physical weakness, sluggishness and disorientation that plaintiff was unable to fully concentrate for days on end.

27. From May 24, 2019 to October 5, 2019, at Mid-State Correctional Facility, plaintiff's sleep was repeatedly interrupted by officers banging on the cell door every half hour to keep him awake, in addition to the constant light which interfered with his sleep.

28. At Mid-State, from July 27, 2019 to July 29, 2019 plaintiff was denied seven (7) consecutive meals, and from July 30, 2019 to August 1, 2019 plaintiff was denied five (5) consecutive meal.

CONTINUED CONFINEMENT AT SOUTHPORT CORRECTIONAL FACILITY FROM ~~October to~~

29. On October 21, 2019, at Southport, plaintiff was choked by officer for about one (1) minutes to the extent that he was unable to breathe as he gasped for air.

30. On January 18, 2020, plaintiff was attacked by defendant Clark and Furney in his cell, and was denied his visit and again on January 19, 2020.

31. Plaintiff submitted a grievance dated April 27, 2020 regarding defendant Paucelius denying the dinner tray. More specifically, on April 25, 2020, kosher hot meals were not initially handed out. Paucelius subsequently returned to deliver the tray but did not open plaintiff cell hatch to provide plaintiff the tray. As a result of filing said grievance, when he returned to work, Paucelius directed his officers not to provide plaintiff his dinner meal on May 4, 2020.

32. Plaintiff submitted grievance dated May 11, 2020 regarding defendant Paucelius threatening to issue plaintiff a misbehavior report for not speedingly obtaining the food from the hatch on

4

May 3, 2020; he directing his officers to deprive plaintiff dinner on May 4 & 5, 2020. As a result of filing said grievance, when he returned to work, Paucelius directed his officers to deprive plaintiff dinner on May 19, 20, 21 and 2020. Paucelius returned on May 23, 24, 25, 27, 30 & 31, 2020 and directed for plaintiff not to be provided his dinner meals.

33. Plaintiff was denied dinner on June 1-2, 12-17, 19-21, 23, 25-29, at the direction of Paucelius.

34. Plaintiff was denied dinner on July 1, 2020; breakfast, lunch and dinner on July 2, 2020; lunch and dinner on July 3-5, 2020, at the direction of Paucelius.

35. Plaintiff was denied breakfast and lunch on July 6, 2020; dinner on July 7, 2020; breakfast, lunch and dinner on July 8, 2020; dinner on July 10, 2020 at the direction of Paucelius.

36. From July 10, 2020 to July 15, 2020, plaintiff missed sixteen (16) consecutive meals and before being deemed on a hunger strike. Plaintiff remained on hunger-strike until July 27, 2020. Plaintiff was in the care of defendant Oakes who told plaintiff that he is not qualified to examine and diagnose plaintiff's stomach condition but plaintiff stomach would have to be examined by a gastrointestine [sic] specialist. Plaintiff was never refered to said specialist and continued to suffer constant pain throughout his body, including extreme pain in his stomach, lower and mid back, left thigh, chest and upper back. This stemmed from plaintiff's stomach which worsened.

37. Plaintiff was denied dinner on July 27-31, 2020, and on August 1-2, 4, 6-17, 19-25, 31, 2020; September 1-5, 7, 9-10, 14-16, 21-22, 2020, at the direction of Paucelius.

ASSAULT: Defendant Terribilini, Teshani, Marshall and Schmidt

38. On July 26, 2020, at Southport's facility Hospital, defendant Terribilini and Teshani repeatedly slammed the cell hatch on plaintiff's left hand and arm, and defendant Marshall kicked at and strucked plaintiff in the face and head through the cell hatch.

39. This assault lasted for about ten (10) minutes until defendant Schmidt arrived and directed them to stop and to release plaintiff's arm.

40. When plaintiff requested the meal he was denied by Terribilini, Terribilini, Teshani and Marshall continued to assault plaintiff in the same manner for several minutes while Schmidt stood bye and observed the attack.

5

41. Plaintiff suffered swelling, bruises, cuts and abrasions to his left arm extending from his wrist to his upper shoulder, and swelling and bruises to the left side of his face. Plaintiff has three (3) permanent scars about his left arm as a result.

### Denial of Weekly Phone Calls by Paucelius, and daily call by Post and Reinhart

42. In addition to the several grievances relating to the denial of meals and retaliation that plaintiff submitted regarding defendant Paucelius, on July 20, 2020, plaintiff submitted a grievance regarding Paucelius reducing his Progressive Inmate Movement System (PIMS) level — although plaintiff did not receive misbehavior report — to prevent plaintiff from daily phone priviliges on the Tablet, at the same time, plaintiff was even denied weekly phone calls on PIMS level one.

43. Plaintiff was denied his weekly phone call from July 2020 to October 20, 2020, but did receive a call on August 24, 2020, at the direction of Paucelius.

44. Plaintiff was prevented from contacting family who live far away and in other states. There were no legitimate security interests of the prison when only plaintiff was denied week calls. It is worth noting that visits were suspended due to the pandemic.

### CONTINUED CONFINEMENT AT UPSTATE

45. Plaintiff have not been afforded his request for frequent mental health services despite his prolonged isolated confinement in the SHU and need for such due to the detrimental effects on his mental health. Plaintiff had not been afforded adequate mental health services from May 3, 2021 to the date of this Complaint.

46. On July 1, 2021, plaintiff was assaulted by officers within the confines of his cell. On July 12, 2021, plaintiff was assaulted while being escorted to a call call, brutally attacked within the confines of his cell resulting in plaintiff needing stitches for his chin.

47. Plaintiff was denied 9 of 12 meals from May 28, 2021 to May 31, 2021; breakfast and lunch on June 1-2, 2021; dinner on June 5; breakfast on June 6 to June 11; breakfast and lunch on June 12-13; dinner on June 14; breakfast on June 16; breakfast and lunch on June 18; and dinner on June 20, 25-26; lunch on July 1; and all meal on July 2 to July 4; dinner on July 6; breakfast and lunch on July 7; and dinner on July 9-10; breakfast and dinner on July 14 and July 21, 2021.

THIRD MISBEHAVIOR REPORT: Period of Confinement August 25, 2021 to September 24, 2021

48. In March of 2020, plaintiff submitted grievance about officers and defendant Collins, who would not turn the cell light off during the night hours, and Collins' effort to harass him by directing plaintiff to remove the light cover while allowing another prisoner to maintain the light cover (which is not prohibited by any facility rule).

49. After plaintiff returned back from COVID quarantine on Mid-April, and upon Collins' return to work on May 3, 2020 in the housing unit where plaintiff was located, at about 5:30 a.m., Collins repeatedly banged on plaintiff cell door and shouted (though it was inaudible to plaintiff).

50. Plaintiff was subsequently served misbehavior report charging violation of inmate rule 112.21 (Count Violation) and 106.10 (Direct Order).

51. On May 15, 2020, plaintiff was advised of the hearing will be held despite the fact that all prisoner functions were shut down due to the novel coronavirus. It is worth noting that prisoners were not provided mask and officers were not required to wear masks at this point.

52. Instead of postponing the hearing as plaintiff requested, the defendant Speck held the hearing in plaintiff's absence, and found plaintiff guilty of both charges. A penalty was imposed of 30 days SHU along with 30 days loss of phone, recreation, package, commissary and good time. Plaintiff waive any and all claims related to loss of good time.

53. Defendant Speck finding of guilt was not supported by some reliable evidence since there are no facility rules requiring prisoners to sit or stand for any facility count, and the cell lights are turned off at 5 A.M. and not turned on until 7 a.m.

54. On July 14, 2020, defendant Venettozzi reviewed the hearing record, and affirmed the decision, but failed to correct the due process violation, since plaintiff should not have been required to choose between his health and to attend a prison disciplinary hearing, and since their guilt was not supported by some reliable evidence.

55. Based on the hearing record and plaintiff's disciplinary record, defendant Speck and Venettozzi were aware that plaintiff had served more than two-and-a half years in the SHU, had a substantial amount of confinement time to serve and were deliberately indifferent to the effects of long term confinement on plaintiff's physical and mental health.

7

FOURTH MISBEHAVIOR REPORT: Period of Confinement September 24, 2021 - October 24, 2021

56. In October 2020, plaintiff submitted grievance regarding defendant Coon for yanking the handcuffs as he uncuffed him and pushing plaintiff in the chest.

57. On December 27, 2020, plaintiff submitted grievance regarding Coon who gripped and tug on my palms and fingers, though he was applying cuffs to his wrist.

58. On January 2, 2021, plaintiff received a misbehavior report written by Coon, charging violation of inmate rule 102.10 (Threats), 107.11 (Harassment) and 106.10 (Direct Order).

59. On January 11, 2021, defendant Ladoue commenced the hearing. Following, Ladoue found plaintiff guilty of all charges and imposed a penalty of 90 days SHU along with 90 days loss of recreation, phone and three month of good time. Plaintiff waive any and all claims related to the loss of good time.

60. On January 26, 2021, plaintiff appealed upon the ground that he was denied his due process right (1) to be present at the hearing because he was improperly excluded, (2) to introduce evidence, including grievances to support his retaliation defense and his disciplinary history as mitigating evidence and evidence of the effects of long-term SHU confinement," and (3) the penalty was grossly disproportionate to the non-violent offenses he was alleged to have committed.

61. On February 17, 2021, defendant Venettozzi reviewed the hearing record, and affirmed the decision, but failed to correct the due process violation.

62. Defendant Ladoue and Venettozzi were aware that plaintiff had served more the three years in SHU, had a substantial amount of confinement time to serve remaining and were deliberately Indifferent to the effects of long-term confinement on plaintiff's physical and mental health.

63. Plaintiff has a due process right not to have confinement imposed for offenses — as defined in 7 N.Y.C.R.R. 301.2 — that do not pose a significant threat to the security and safety of the facility and others.

FIFTH MISBEHAVIOR REPORT: Period of Confinement October 24, 2021 - December 8, 2021.

64. On January 21, 2021, plaintiff received a misbehavior report charging violation of inmate rule

8

101.20 (lewd conduct), 106.10 (Direct Order), 107.10 (Interference) and 107.11 (Harassment).

65. On January 25, 2021, at Southport, at about 10:30 A.M., an officer appeared at plaintiff's cell and informed him to get ready for the disciplinary hearing; but, never returned to escort plaintiff to the hearing nor advised plaintiff that the hearing would be held in his absence.

66. Defendant Reinhart held the hearing in plaintiff's absence, found plaintiff guilty of all charges and imposed a penalty of 90 days SHU.

67. On January 27, 2021, plaintiff appealed upon the grounds that he was denied his due process right to be present at the hearing and to present a defense that the officers' motivation of making such a false report was to have plaintiff moved from the cell block to another.

68. On February 17, 2021, defendant Venettozzi reviewed the hearing record, and modified the hearing decision to 45 days SHU, but failed to correct the due process violation.

SIXTH MISBEHAVIOR REPORT: Period of Confinement December 8, 2021 - September 4, 2022

69. In January 2020, Plaintiff was served a misbehavior report written by defendant Clark, charging violation of inmate rule 104.11 (Violent Conduct), 100.11 (Assault on Staff), 107.10 (Interference), and 106.10 (Direct Order).

70. Hearing determinations had been reversed on March 20, 2020 and September 1, 2020 due to errors by the hearing officers.

71. On February 10, 2021, defendant Post conducted the re-hearing. Post found plaintiff guilty of all charges and imposed a penalty of 270 days SHU along with 270 days loss of packages and commissary.

72. On March 8, 2021, plaintiff appealed upon the grounds that (1) he was denied his right to a prompt hearing, since the rehearing was not completed in 14 days, (2) defendant Clark and Furney conduct an unauthorized search of plaintiff's cell and, after handcuffing plaintiff extremely tight behind the back and Clark stated "You wrote a grievance that I assaulted you", Clark punched plaintiff in the back of the head and pushed him on the bed where he and Furney repeatedly struck plaintiff in the face, head and upper and lower back for approximately five [5] minutes; (3) plaintiff was denied his right to call a

9

medical staff as a witness to testify whether plaintiff soft skippy shoes could have caused swelling and bruising to Clark's chin from a kick by plaintiff as alleged by Clark, and whether Clark's bicept and arm injuries and Furney's knuckles injuries are inconsistant with Plaintiff's version of the incident which was also supported by the inmate witness' testimony that he witnessed Clark strike plaintiff in the back of the head; and (4) the 270 day SHU sanction should be signicantly reduced since the combination of three consecutive years plaintiff has already served put his physical and mental health at risk.

73. On March 9, 2021, defendant Piccolo reviewed the hearing record and affirmed the decision.

74. On May 27, 2021, Venettozzi reviewed the hearing record and affirmed the decision.

75. Defendant Post, Piccolo and Venettozzi were aware that plaintiff had served more than three years in SHU, have a substantial amount of confinement time to serve remaining and were deliberately indifferent to the effects of long-term confinement on plaintiff's physical and mental health.

### Effect of Long-Term Confinement

76. Plaintiff have served more than four years consecutively in SHU since 2018, and have more than a year to serve in SHU confinement. Plaintiff confinement and continued confinement in SHU was an atypical and significant hardship on plaintiff and was grossly disproportionate to the allege offenses plaintiff's was accused of for his confinement and continued confinement in the SHU.

77. Plaintiff's prolonged isolation has and continue to exacerbated his mental illness, including but not limited to, fear, extreme paranoia, antisocial personality disorder, severe anxiety, chronic depression, and the increased the risk of a mental or nervous breakdown and likeliness of self harm requiring his involuntary commitment to a psychiatric hospital for effective and consistent psychiatric treatment to maintain his stability. Prolonged isolation predisposes prisoners to self harm regardless of their individual circumstances. Plaintiff is in imminent danger, as his confinement in SHU amounts to psychological torture.

78. Plaintiff has a history of mental or nervous breakdowns that disposed him to self-harm and required his involuntary commitment in several city and state hospitals for treatment. See, People v. Bradshaw, 18 N.Y. 3d 257, 259-61, 265-66 (2011)(detailing plaintiff's mental history).

## CLAIMS

74. Plaintiff brings First Amendment retaliation claims against Paucelius, Collins, Coons, Clark and Furney; First Amendment violation based on the denial of phone calls by Paucelius

75. Plaintiff assert Eighth Amendment excessive force claims against Terribilini, Teshani, Marshall, Coons, Clark, and Furney;

76. Plaintiff assert Eighth Amendment failure-to-intervene claim against Schmidt;

77. Plaintiff assert Eighth Amendment conditions-of-confinement claims based on the denial of meals against Paucelius;

78. Plaintiff assert Eighth Amendment excessive SHU confinement against Hill, White, Speck, Ladoue, Reinhart, Post, and Piccolo and Venettozzi;

79. Plaintiff assert Eighth Amendment denial of medical care against defendant Oakes;

80. Plaintiff assert Fourteenth Amendment procedural due process claims arising from the various misbehavior reports and disciplinary hearings against Hill, White, Speck, Ladoue, Reinhart, Post, Piccolo, and Venettozzi

## Relief Requested

WHEREFORE, Plaintiff requests the Court to grant the relief as follows:

    A. Issue an injunction ordering defendant Venettezzi and Piccolo, or their agents to:
        1. Expunge each disciplinary conviction from plaintiff's record that was in violation of his right to due process.
    B. Award compensatory damages against all defendants, jointly and severely;
    C. Punitive damages against the individual defendants in an amount to be determined by a jury; and
    D. Such other relief as this Court shall deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.
Signed this February 11, 2022

                                          Mr. Jay Bradshaw
                                          Pro Se Plaintiff